UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MELANIE R. BLACKWELL,            )
           Plaintiff,              )    3:11-cv-00684-LRH-VPC
      v.                              )
                               )    **REPORT AND RECOMMENDATION**
                               )    **OF U.S. MAGISTRATE JUDGE**
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                               )    September 13, 2012
           Defendant.              )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the Court is plaintiff's motion for remand (#12).[1] Defendant filed an opposition and a cross-motion for summary judgment (#13, #14).[2] Plaintiff filed a reply (#17). For the reasons set forth below, the Court recommends that plaintiff's motion for remand (#12) be denied and defendant's cross-motion for summary judgment (#14) be granted.

**I. ADMINISTRATIVE PROCEEDINGS**

On September 29, 2008, plaintiff Melanie R. Blackwell ("plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act (AR 27). Plaintiff alleged disability beginning May 10, 2002, due to bipolar disorder, thyroid problems, knee injury, post-traumatic stress disorder and an ulcer. *Id*. at 178. The Commissioner denied plaintiff's claim initially and on reconsideration. *Id.* at 78-89. Plaintiff appeared at a hearing on August 31, 2010, before Administrative Law Judge ("ALJ") Kalei L. Fong. *Id*. at 53-77. The ALJ filed a written

---

[1] Refers to the court's docket number.
[2] Docket numbers 13 and 14 are identical.

opinion on November 8, 2010, in which he upheld the denial of plaintiff's claim. *Id* at 27-37. The Appeals Council denied review on August 31, 2011, rendering the ALJ's decision final. *Id*. at 1-3. Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on September 22, 2011 (#1).

## II. BACKGROUND

Plaintiff was forty-four years old at the time of her hearing before ALJ Fong (AR 58). Plaintiff has an eleventh grade education. *Id*. at 59. Plaintiff's past relevant employment includes work as a telemarketer, courier, customer service representative, and retail salesperson. *Id*. at 169. Plaintiff alleges she became disabled beginning May 10, 2002, due to bipolar disorder, thyroid problems, knee injury, post-traumatic stress disorder and an ulcer. *Id*. at 178.

The ALJ found that plaintiff is capable of performing past relevant work as a customer service representative, courier, and telemarketer. Accordingly, the ALJ determined that plaintiff "has not been under a disability." *Id*. at 35-36. The ALJ also considered plaintiff's age, education, work history, and residual functional capacity, and determined that she is capable of performing other work that exists in significant numbers in the national economy. *Id*. at 36. Specifically, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 29, 2008, the application date (20 C.F.R. § 416.971, *et seq*.).

2. The claimant has the following severe impairments: right knee impairment and morbid obesity (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a narrow range of light work as defined in 20 C.F.R. § 416.967(b). She is able to lift and carry twenty pounds occasionally and ten pounds frequently. She is able to stand for two hours and/or walk for at least two hours in an eight-hour workday. She is able to sit for about six hours during a workday. She is not limited in pushing and pulling. She is not able to crawl, or climb ladders, ropes, or scaffolds. Her alleged mental impairments do not limit her capacity to perform basic work activities.

5. The claimant is capable of performing past relevant work as a customer service representative, courier, and telemarketer. These jobs do not require

           the performance of work related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 416.965).

6.       The claimant has not been under a disability, as defined in the Social Security Act, since September 29, 2008, the date the application was filed (20 C.F.R. § 416.920(f)).

7.       Alternatively, based upon the claimant's age (36 – 45 years old), education (11th grade), work history (semi-skilled), and residual functional capacity assessment, she is capable of performing other work that exists in significant numbers in the national economy.

*Id*. at 29-36.

### III. STANDARD OF REVIEW

The court must uphold the ALJ's decision if the ALJ applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1279). "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ considers: (1) whether the claimant is engaging in substantial gainful activity; (2) the severity of the alleged impairment; (3) whether the impairment meets or equals a listed impairment and meets the duration requirement; (4) whether the claimant is capable of doing work he or she has done in the past; and (5) whether the impairment prevents the claimant from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV.  ANALYSIS

Plaintiff contends the ALJ made multiple legal errors, and came to conclusions which are not supported by substantial evidence in the record. Specifically, plaintiff claims the ALJ: (1) came to an erroneous conclusion at Step 4, as there is no evidence that any of plaintiff's prior jobs constitute past relevant work; (2) improperly rejected an examining doctor's opinion; (3) made incomplete findings at Step 2; (4) failed to take all of plaintiff's functional limitations into consideration when formulating the Residual Functional Capacity ("RFC") assessment; (5) made an improper credibility assessment; and (6) wrongfully rejected lay witness evidence (#12, p. 4).

**A. Plaintiff's Past Relevant Work**

Plaintiff contends the ALJ's conclusion at Step 4 is erroneous, as there is no evidence that plaintiff's prior jobs as a customer service representative, courier, or telemarketer constitute past relevant work (#12, p. 10). Defendant argues that even if the ALJ made an error at Step 4 of the sequential evaluation process, the error was harmless because the ALJ made an alternative finding at Step 5 that plaintiff can perform other work that exists in significant numbers in the national economy (#13, p. 13). Plaintiff rebuts defendant's argument on the grounds that the ALJ's finding at Step 5 was improperly rendered without guidance from a vocational expert (#17, p. 2-3). Thus, plaintiff contends the ALJ's finding at Step 5 was not based on substantial evidence in the record.

Plaintiff claims she did not perform any of her past jobs at Substantial Gainful Activity ("SGA") levels, within the past fifteen years, or for a period of time long enough to learn the job (#12, p. 10). Specifically, plaintiff claims she did not perform any of her prior jobs at SGA levels because she did not work long enough to earn the required amount for the year in question. *Id*.

At Step 4 of the sequential evaluation, the regulations consider the claimant's ability to "do your past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(e). This involves a determination of the claimant's residual functional capacity and a determination of the claimant's ability to return to previous work. *Id*. Social Security Administration regulations define past relevant work as work which was performed "within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565. The Social Security Administration's primary criterion for determining whether a claimant's work constitutes "substantial gainful activity" is the amount of the claimant's earnings per year. 20 C.F.R. § 404.1574. The inquiry as to whether a claimant may perform past relevant work does not require the use of vocational testimony. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).

Even assuming, *arguendo*, that the ALJ was incorrect in finding plaintiff's prior jobs to constitute past relevant work, this Court finds that any error was harmless. Considering plaintiff's age, education, and work history, there is substantial evidence in the record to support the ALJ's finding that plaintiff is capable of performing other work that exists in significant numbers in the national economy.[3] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."). Accordingly, reversal on this basis is unwarranted.

**B. ALJ's Rejection of Examining Doctor's Opinion**

---

[3] Plaintiff cites *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991), to support her argument that a vocational expert should have been utilized at her hearing. However, *Delorme* merely states that when a claimant must alternate periods of sitting and standing, the ALJ should call a vocational expert. On the record before the Court, plaintiff is able to stand and/or walk for two hours, and sit for six hours, in an eight-hour workday. There is no evidence that plaintiff must alternate periods of sitting and standing, as contemplated in *Delorme*. *See id*. at 845 (claimant could not sit or walk for more than forty-five minutes at a time).

5

Plaintiff contends the ALJ improperly rejected the opinion of consulting psychologist Michael F. O'Connell, Ph.D., and did not substantiate his rejection with clear and convincing reasons.[4] Plaintiff alleges the ALJ conflated Dr. O'Connell's medical opinion, i.e., that plaintiff's impairments were "likely to be a significant impediment both in finding a job and maintaining employment" with "issues reserved to the Commissioner," i.e., that plaintiff was disabled (#12, p. 12). Plaintiff also argues that even though she failed to produce a valid profile during one portion of Dr. O'Connell's exam, this was not a sufficient reason for discounting the rest of Dr. O'Connell's testing (#12, p. 13). Finally, plaintiff asserts that because Dr. O'Connell assessed a large number of non-exertional limitations and impairments, a vocational expert should have testified at plaintiff's hearing. *Id*. Defendant contends the ALJ properly rejected Dr. O'Connell's opinion, and provided valid reasons for doing so. Defendant asserts that Dr. O'Connell's conclusory statement that "competitive employment appears beyond [plaintiff's] reach" deserved no special significance, and was not entitled to greater weight than the opinions of state agency psychologists Dr. Hennings and Dr. Kennemar (#13, p. 9). Defendant also asserts that Dr. O'Connell's opinion was inconsistent with other evidence in the record, and was inconsistent with his own findings that plaintiff exhibited poor effort during testing and had a tendency to exaggerate (#13, p. 9-10).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Cases within the Ninth Circuit distinguish between the opinions of: (1) treating physicians, (2) examining physicians, and (3) non-examining physicians.[5] *Lester*, 81 F.3d at 830. Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to

---

[4] Dr. O'Connell examined plaintiff in April of 2009, and found that she could not maintain work due to her depression and social anxiety (AR 34).

[5] Plaintiff intermittently refers to Dr. O'Connell as a "treating doctor" (#12, p. 4), an "examining doctor" (#12, p. 11), and a "consultative examiner" (#12, p. 11). The Court finds that Dr. O'Connell is best described as an examining physician, though for the purposes of this case it is immaterial whether Dr. O'Connell is considered a treating physician or examining physician, as the standard is the same for both. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the contradicted opinion of a treating or examining physician).

6

cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted). Likewise, the opinions of examining physicians are afforded greater weight than the opinions of non-examining physicians. *Lester*, 81 F.3d at 830-31 (citing *Pitzer v. Sullivan*, 908 P.2d 502, 506 (9th Cir. 1990)).

The ALJ may disregard a physician's opinion whether or not that opinion is contradicted. *See Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the ALJ rejects a treating or examining physician's opinion which is uncontradicted by another doctor, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion. If the ALJ rejects a treating or examining physician's opinion which is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the contradicted opinion. *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). More weight is given to an opinion that is more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4); *see also Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).

As an examining physician whose opinions are contradicted by Dr. Hennings and Dr. Kennemar's opinions, Dr. O'Connell's medical opinions may only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. Here, the ALJ considered Dr. O'Connell's report, but "accord[ed] minimal evidentiary weight to the opinion" (AR 34). The ALJ then provided several reasons for discrediting Dr. O'Connell's conclusions. *Id*.

First, the ALJ found that Dr. O'Connell's conclusion, i.e., that plaintiff was unable to work, was an issue reserved to the Commissioner. *Id*. An ALJ does not accord special significance to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. § 416.927(d)(3). An opinion that a plaintiff is unable to work is not a medical opinion– but an opinion about an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean claimant is disabled); *Martinez v. Astrue*, 261 Fed. Appx. 33, 35 (9th Cir. 2007) ("the opinion that Martinez is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded

the weight of a medical opinion."). Dr. O'Connell's opinion that plaintiff was unable to work deserved no special significance. Accordingly, the ALJ properly accorded greater weight to the opinions of state agency psychologists Dr. Hennings and Dr. Kennemar, who found that plaintiff did not have a severe mental impairment.

Second, the ALJ explained that Dr. O'Connell's opinion was inconsistent with other evidence in the record (AR 34-35). The more consistent an opinion is with the record as a whole, the more weight the ALJ will give that opinion. 20 C.F.R. § 416.927(c)(4). Here, the ALJ noted that plaintiff failed to produce a valid profile in a portion of her testing due to poor effort, and that plaintiff presented herself to Dr. O'Connell as more limited than she claimed to be in her Daily Activities Report. *Id*. at 34. The ALJ also noted that Dr. O'Connell's opinion appeared inconsistent with his finding that plaintiff had a tendency to exaggerate her problems and to overstate her alleged psychopathology. *Id*.

Dr. O'Connell's opinion that plaintiff is unable to work was entitled to no greater weight than the conflicting opinions of state agency psychologists Dr. Hennings and Dr. Kennemar. In addition, the ALJ properly found that Dr. O'Connell's opinion was inconsistent with the record, and with his own findings that plaintiff exaggerated her problems. Since the medical evidence on the record is insufficient to outweigh the ALJ's determination, this Court will not disturb the ALJ's decision. *See Andrews*, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the decision where the evidence is susceptible to more than one rational interpretation.").

### C. The ALJ's Findings at Step 2

Plaintiff contends the ALJ committed reversible error by failing to list plaintiff's thyroid condition as a severe impairment in Step 2 (#12, p. 15). Plaintiff asserts that her hypothyroidism is a causative factor in her obesity, and that the ALJ was illogical in finding that plaintiff's obesity was severe, but her hypothyroidism was not severe. *Id*. Defendant argues that because the ALJ found plaintiff had some severe impairments, he had to consider the functional effect of all her impairments– both severe and non-severe (#13, p. 7). Thus, defendant contends it is

8

immaterial whether the ALJ listed hypothyroidism as a severe impairment. *Id*.

A claimant may only be found to be disabled if the claimant has a severe impairment, or a combination of impairments, significantly limiting the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step two, the claimant must prove that a physical or mental impairment is severe by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908. The claimant's own statement of symptoms alone will not suffice. *Id*. An impairment, or combination of impairments, is "not severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921.

The ALJ found that plaintiff's alleged thyroid impairment is not a severe impairment that significantly affects her capacity to perform basic work activities (AR 29). The ALJ found that although plaintiff alleged disability due to hypothyroidism, she had been non-compliant with her prescription medications. In March of 2008, plaintiff requested a refill of her thyroid medication, and reported she had not taken it in nine months. *Id*. On September 4, 2008, plaintiff again requested thyroid medication because she had run out. *Id*.

On the record before the Court, plaintiff has presented no medical evidence that her thyroid condition constitutes a severe impairment. Plaintiff has allowed her thyroid medication to run out on multiple occasions, and has presented no evidence that her hypothyroidism could not be helped had she properly taken her medication.

The ALJ properly determined that plaintiff's right knee impairment and morbid obesity constitute severe impairments. The ALJ's determination that plaintiff's hypothyroidism is not a severe impairment is supported by substantial evidence on the record.

**D. The ALJ's Findings at Step 3**

Plaintiff claims the ALJ failed to consider that her obesity, combined with her right knee impairment, meets or equals an impairment in the Listing of Impairments ("the Listings") (#12,

p. 16). Specifically, plaintiff contends the ALJ should have compared her impairments with Listing 1.02, under which a claimant is per se disabled if she can prove major dysfunction of a joint (#13, p. 6).[6] Defendant opposes plaintiff's assertions on the grounds that plaintiff has provided no analysis indicating how her impairments would have met or equaled this listing, and plaintiff has not alleged an inability to ambulate effectively, which is an element of Listing 1.02.

In Step 3, the ALJ compares the claimant's impairments with those found in "The Listing of Impairments" ("the Listings"). *See* 20 C.F.R. § 404, Subpart P, Appendix 1. The Listings describe specific impairments of each of the major body systems which are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). If the claimant's impairments meet or equal a listed impairment, and are of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). It is the claimant's burden to show she has an impairment that meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Obesity is not a separately listed impairment. Thus, a claimant will be deemed to meet or equal the criteria of a listed impairment if "there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-01p (2002). "[An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case *based on the*

---

[6] Listing 1.02 provides, in relevant part:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

1. A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

*information in the case record.*" *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Id*. at 683.

Here, the ALJ acknowledged that plaintiff's obesity increased the severity and functional limitations of her other impairments (AR 30). However, he determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Instead, the ALJ found that plaintiff's alleged musculoskeletal impairment did not reach the severity criteria of Listing 1.00B2, and plaintiff did not exhibit the requisite inability to ambulate effectively (AR 30).

The Court finds that plaintiff has not established she has an impairment that meets or equals the criteria of a Listing. *See* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). Plaintiff has not presented any medical evidence in an effort to establish equivalence; nor has plaintiff set forth any evidence or argument to support her contention that "[e]ven if she could lose 250 pounds over the next few years, her knees would still be destroyed" (#12, p. 16). Accordingly, the ALJ was not required to discuss the combined effects of plaintiff's obesity and right knee impairment, and reversal is unwarranted. *See Burch*, 400 F.3d at 682.[7]

**E. The ALJ's Credibility Assessment**

Plaintiff alleges the ALJ employed a "backward analysis" when evaluating plaintiff's credibility, which did not constitute the necessary clear and convincing basis for rejecting plaintiff's testimony (#12, p. 17). Plaintiff asserts that the ALJ improperly rejected plaintiff's testimony because it did not comport with his RFC finding– instead of using plaintiff's testimony

---

[7] The ALJ's finding that plaintiff's alleged musculoskeletal impairment did not exhibit the requisite inability to ambulate effectively is supported by substantial evidence in the record. The ALJ found that despite plaintiff's obesity, she is able to: (1) lift and carry twenty pounds occasionally and ten pounds frequently; (2) stand for two hours and/or walk for at least two hours in an eight-hour workday; and (3) perform light work, as defined in 20 C.F.R. § 416.967(b). Thus, the Court finds plaintiff has not established that her impairments met or equaled Listing 1.02.

11

to construct the RFC assessment. *Id*. Defendant contends the ALJ set forth valid reasons for discounting plaintiff's subjective symptom testimony, which were supported by substantial evidence in the record (#13, p. 12).

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets the first test and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

"Factors that the adjudicator may consider when making such a determination include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. However, the ALJ concluded that plaintiff's statements

concerning the intensity, persistence, and limiting effects of her impairments were not credible (AR 33). On the record before the Court, the ALJ gave specific, clear, and convincing reasons for discounting plaintiff's subjective symptom testimony and for finding plaintiff's claims to lack credibility.

First, the ALJ noted that plaintiff stopped working in May of 2002– not as a result of any alleged disability– but because she had a baby (AR 32, 61). Plaintiff testified she had planned to take six weeks of maternity leave and then return to work, but the "job didn't pick up." *Id*. at 65. Plaintiff also testified that for some time after giving birth, her husband worked, and she did not apply for jobs because she stayed at home with the children. *Id*. at 68. Thus, the ALJ properly found that plaintiff conceded that she could have returned to work after the birth of her child. *Id*. at 32.

Second, the ALJ noted that plaintiff had a poor work history with inconsistent earnings even before her alleged onset of disability.[8] *Id*. at 34. Although plaintiff responded well to questions at the hearing, she provided vague testimony as to why she had not worked since 2002, and why she had not consistently applied for work. *Id*. at 32, 34, 59-61. The ALJ properly relied upon plaintiff's poor work history and vague testimony to surmise that plaintiff was out of work due to poor motivation– not because of her alleged impairments. *Id*. at 34; *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ found that claimant had an "extremely poor work history" and that she "has shown little propensity to work in her lifetime", which negatively affected her credibility).

Third, the ALJ found that plaintiff could not articulate when she became disabled and could no longer work. *Id*. at 66-68. The ALJ noted that plaintiff had filed a previous application for Supplemental Security Income in February of 2004, in which she alleged disability since May 15, 1989. *Id*. at 33. This claim was denied. Four years later, plaintiff filed the current application, alleging disability since May 10, 2002. *Id*. However, plaintiff continued to

---

[8] The Court notes that plaintiff had no earnings in 1990-92, 1995-96, and 1999.

intermittently search for work after her alleged onset of disability, and stated that she did not work because she was not hired for any of the jobs for which she applied. *Id*. at 32, 68. Thus, plaintiff's apparent belief that she could have worked if someone had hired her further undermined her claim that she is unable to work because of an alleged disability.

Fourth, the ALJ found that plaintiff did not appear credible when describing her impairments and their limitation on her ability to work (AR 32). *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); SSR 96-7p (an ALJ's personal observation of a claimant at a hearing may be considered in the overall evaluation of credibility). For example, plaintiff gave vague answers as to why she did not receive medical treatment for her hypothyroidism and depression until 2006, and testified that she received very little medical treatment from 2004 to 2009. *Id*. at 32-33, 64. In 2006, plaintiff had multiple "no-shows" for treatment. *Id*. at 33. In 2007, plaintiff received a referral for a bariatric consultation; however, there is no evidence that plaintiff ever followed up on this consultation. *Id*. at 244, 34. Finally, the record reflects the ALJ correctly determined that plaintiff had not been wholly compliant with her own self-care, as multiple reports indicate that plaintiff was inconsistent with taking her prescription medications. *Id*. at 33-34. Considering plaintiff's vague testimony and its inconsistencies with the minimal amount of medical evidence in the record, the Court finds the ALJ properly discounted plaintiff's subjective system testimony. *Id*. at 33.

The ALJ concluded that:

> The claimant is leading a stressful life due to mistrust of her husband; questionable contact with an on-line male person; poor parenting skills with four children; poor living situation; and no motivation to work. The undersigned is persuaded that the claimant simply would rather collect SSI disability benefits than work. *Id*. at 35.

The Court recognizes that an ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." *Bunnell*, 947 F.2d at 345. The Court finds the ALJ properly supported and adequately explained his adverse credibility determination with specific, clear, and convincing reasons. Collectively, the

14

reasons provide a sufficient basis for discrediting plaintiff's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (upholding adverse credibility determination where the "ALJ provided several permissible reasons"). Accordingly, reversal is not warranted on this ground.

### F. The ALJ's Rejection of Lay Witness Evidence

Plaintiff contends the ALJ improperly rejected plaintiff's husband's Third-Party Questionnaire because Mr. Blackwell "filed his own Supplemental Security Income disability claim . . .." (#12, p. 17; AR 34). Defendant contends the ALJ did not reject Mr. Blackwell's statements because he has also applied for disability benefits, but because Mr. Blackwell's statements are not credible (#13, p. 13).

"An ALJ need only give germane reasons for discrediting the testimony of a lay witness." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ found that Mr. Blackwell applied for disability benefits in October of 2008, but held several different jobs in 2010 (AR 34). Thus, the ALJ determined that Mr. Blackwell's testimony lacked credibility, as Mr. Blackwell had alleged he was too disabled to work, but then subsequently, worked. *See Smolen*, 80 F.3d at 1284 (an ALJ may consider inconsistencies between testimony and conduct). The ALJ did not reject Mr. Blackwell's statements on the sole basis that Mr. Blackwell had applied for disability benefits, but rather on the grounds that Mr. Blackwell's statements were self-serving and lacked credibility. *Id*. at 34. Accordingly, the Court finds the ALJ provided a germane reason for discrediting Mr. Blackwell's statements, and reversal is unwarranted.

### V. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's decision was supported by substantial evidence and therefore recommends that plaintiff's motion for remand (#12) be denied and defendant's cross-motion for summary judgment (#14) be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#12) be **DENIED** and defendant's cross-motion for summary judgment (#14) be **GRANTED**.

DATED: September 13, 2012.

*/s/ Valerie P. Cooke*

_____
**UNITED STATES MAGISTRATE JUDGE**